# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

JONATHAN M. LOWNSBERRY,

      Plaintiff,                      CASE NO. 06-CV-13602

v.                                  DISTRICT JUDGE THOMAS LUDINGTON
                                     MAGISTRATE JUDGE CHARLES BINDER

JOHN McNEIL LEES, a/k/a
JACK McNEIL LEES,
NORTHEAST MICHIGAN
COMMUNITY SERVICE
AGENCY,

      Defendants.[1]

_____/


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANT NORTHEAST MICHIGAN COMMUNITY SERVICE AGENCY'S MOTION FOR SUMMARY JUDGMENT, DEFENDANT LEE'S CONCURRENCE IN THE MOTION, AND PLAINTIFF'S MOTION TO AMEND
(Dkt. 58, 60, 64)


## I.     RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant NEMSCA's[2] and

Lees' motion for summary judgment be **GRANTED** and that Plaintiff's motion to amend be

**DENIED.**

---

[1]Defendants Cheboygan Community Schools and Cheboygan-Otsego-Presque Isle Intermediate School District were dismissed by stipulation of the parties and order dated April 21, 2008. (Dkt. 56.)

[2]At times, such as in the proposed Second Amended Complaint, Defendant NEMSCA is referred to as NMSCA; for purposes of this Report, these acronyms are functional equivalents.

## II.  REPORT

### A.  Introduction

By order of United States District Judge David Lawson, this civil rights case brought under 42 U.S.C. § 1983 was referred to this magistrate judge for pretrial case management on August 25, 2006.  (Dkt. 2.)  The case was reassigned to United States District Judge Thomas Ludington on September 13, 2006.  (Dkt. 3.)  Although the case was initially filed *pro se*, Plaintiff later secured counsel and an amended complaint was filed on December 20, 2007.  (Dkt. 42.)  On June 24, 2008, Defendant Northeast Michigan Community Service Agency ("NEMSCA") filed its motion for summary judgment (Dkt. 58), Defendant Lees concurred in the motion (Dkt. 60), Plaintiff responded (Dkt. 65), and Defendant NEMSCA replied.  (Dkt. 73.)  On June 24, 2008, Plaintiff filed a motion to amend (Dkt. 64), Defendants responded (Dkt. 67), and Plaintiff replied.  (Dkt. 72.)  Oral argument was heard on August 19, 2008.  Accordingly, these motions are ready for Report and Recommendation.

### B.  Background

Plaintiff contends in his Amended Complaint that, "[i]n the 1991-92 school year, when Plaintiff Lownsberry was four years old, he attended a Head Start program operated by Defendant NEMSCA and his teacher was Defendant Lees."  (Am. Compl., Dkt. 42 ¶ 10 (capitalization altered).)  Plaintiff further contends that, during this time, "Defendant Lees <u>intentionally and repeatedly</u> sexually assaulted Lownsberry by <u>touching</u>, squeezing or hurting his penis, <u>touching his butt, touching and/or</u> penetrating his anus, and holding his hand<u>s</u> under hot water, <u>all without legitimate educational or child care purposes</u>."  (Dkt. 42 ¶ 12 (emphasis in original).)  "<u>Some or all of the assaults occurred while Lownsberry was locked in a bathroom with and by Lees.</u>" (*Id.* (emphasis in original).)  As a result of the assaults, Plaintiff "began to show bizarre behavioral

symptoms, <u>including but not limited to extreme and otherwise unreasonable fear of and attempts to avoid going to the Head Start class taught by Lees</u>, which he did not have during the prior year . . . ." (Dkt. 42 ¶ 14 (emphasis in original).)  Plaintiff avers that both the presence of locks on the bathroom door and the extreme heat of the water coming out of the tap violated policies governing Head Start programs.  (*Id.* ¶ 15.)

In 1992-93, Plaintiff told his family about the above-alleged incidents and although the Michigan State Police investigated, no criminal charges were filed against Defendant Lees.  (*Id.* ¶ 20.)  However, Plaintiff notes that the locks were removed from the bathroom doors and the water temperature was adjusted by Defendants as a result of the investigation.  (*Id.* ¶ 21.)

Plaintiff alleges that Defendant "<u>Lees had engaged in, been investigated for and/or charged with engaging in inappropriate and/or criminal sexual and/or anti-social behavior prior the [sic] assaults on Lownsberry which were or should have been known to Defendants NEMSCA [] and should have precluded his hiring and/or continued employment as a Head Start teacher.</u>"  (Dkt. 42 ¶ 40.)  In addition, Plaintiff avers that he when he attended Cheboygan Schools, he "was the object of retaliation <u>by employees of the Defendants and others</u> for the complaints that his parents had made about Defendant Lees' assaults on him, particularly including being called a perpetrator and being left out of the events which other children attended (field trips, recess, plays, etc.)."  (*Id.* ¶ 26.)  Plaintiff further claims that he was "scrutinized and held to standards not applied to other students, such as not being allowed to touch other students, <u>based on allegations and/or complaints made by Defendants' employees</u>."  (*Id.* ¶ 27 (emphasis in original).)  Plaintiff states that he was "ultimately taken to court twice, being accused of sexual harassment when he touched female classmates on the arm."  (*Id.* ¶ 28.)

Plaintiff's Amended Complaint contains the following counts: federal question claims of (I) violation of civil rights – substantive due process (Defendant Lees); (II) violation of First Amendment – retaliation (Defendant NEMSCA); (III) governmental liability (NEMSCA); (IV) municipal liability (Cheboygan Schools/Intermediate School District); and the state law claims of (V) assault and battery (Defendant Lees); (VI) intentional infliction of emotional distress (Defendant Lees). Plaintiff's proposed Second Amended Complaint removes Count IV, since Defendant Cheboygan Schools/ISD was dismissed from the case (Dkt. 56), and adds a Count VII asserting a *Bivens* action against Defendants NEMSCA and Lees pursuant to *Bivens v. Six Unnamed Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 395-97, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). (Dkt. 64 at Ex. 2.)

In both the First Amended Complaint and the proposed Second Amended Complaint, Plaintiff seeks compensatory and punitive damages, as well as attorney's fees and costs.

## C.     Defendants' Motion for Summary Judgment

### 1.     Motion Standards

A motion for summary judgment will be granted under Rule 56(c) of the Federal Rules of Civil Procedure where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may

consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit has explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**2.     Plaintiff's Claims**

**a.     Claims Against NEMSCA**

The Amended Complaint avers two counts against Defendant NEMSCA. Plaintiff alleges in Count II that NEMSCA violated the First Amendment by retaliating against him. Plaintiff contends that "[t]he acts of Defendants, and each of them, particularly the staff and personnel of Defendants NEMSCA and Cheboygan Schools / Intermediate School District, were undertaken in concert with the named Defendants and other unnamed individuals acting in concert with them in retaliation for Plaintiff and his family's complaints to public authorities in an attempt to expose the tortuous and criminal activity of Defendant Lees undertaken against Plaintiff." (Dkt. 42 ¶ 46.) The retaliatory acts as described by Plaintiff included being called a perpetrator, being left out of events in which other children were included, being scrutinized, and being held to standards not applied to other students. (*Id.* ¶¶ 26-27.)

The amended complaint also alleges a "governmental liability" claim against NEMSCA for wrongfully hiring and continuing the employment of Lees, despite having knowledge of Lees' past abuse of children, and for failing or refusing to act to discipline Lees or to remove him from the opportunity to carry out such acts, which in effect was the same as ratifying, condoning and concealing said acts, making that the *de facto* custom, policy and practice of Defendant NEMSCA. Further, Plaintiff claims that NEMSCA's admitted policy and practice of having lockable bathroom doors, which was not corrected until three or four years after the incident with Plaintiff, and of having a water supply which was not regulated as to temperature and was too hot for use by preschool children, made it possible for Defendant Lees to carry out his acts in private and to harm Plaintiff. (Dkt. 42 ¶¶ 51-52.)

### b. Claims Against Lees

The Amended Complaint asserts one federal civil rights claim against Defendant Lees; Plaintiff alleges that Lees violated his substantive due process rights based on the aforementioned

physical and sexual abuse (Count I).  The Amended Complaint also asserts state law claims of assault and battery (Count V) and intentional infliction of emotional distress (Count VI) against Defendant Lees.

### 3.    Arguments of the Parties

Defendant NEMSCA argues that it is not a governmental entity, let alone a state actor for purposes of 42 U.S.C. § 1983 (Dkt. 58 at 5-7), and that even if it were, there has been no specific allegation of a "policy or custom of exposing children to known assaultive pedofiles [sic]" as required to impose liability under *Monell v. Dep't of Social Services*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  (Dkt. 58 at 8.)

Defendant Lees relies on Defendant NEMSCA's motion and brief and argues that, just as Defendant NEMSCA is a private, non-governmental entity and not a state actor, Defendant Lees, who is an employee of that entity, cannot be considered a state actor.  (Dkt. 60 ¶¶ 4, 6.)

Plaintiff counters that Defendants NEMSCA and Lees are state actors because NEMSCA was created and regulated by state and federal law and, if it is not a state actor, NEMSCA is a federal actor subject to liability under *Bivens*, as alleged in Plaintiff's proposed Second Amended Complaint.  (Dkt. 65 at 18-20.)  Plaintiff further argues that Defendants would not be harmed by a second amendment to the complaint because § 1983 and *Bivens* claims are nearly identical, overlap, and are frequently analyzed together.  (Dkt. 65 at 13-14.)

Since Plaintiff's counter-argument relies on his proposed Second Amended Complaint to cure any potential defect in the Amended Complaint, Plaintiff's Motion to File an Amended Complaint (Dkt. 64) is intertwined with the current motion for summary judgment.

### 4.    Analysis and Conclusions

### a.    Retaliation and Governmental Liability Claims Against Defendant NEMSCA

The gravamen of the retaliation claim (Count II) appears to be directed at employees of the Cheboygan Schools rather than employees of NEMSCA. Although Plaintiff alleges concerted activity by NEMSCA and the Cheboygan Schools taken in retaliation for Plaintiff's family's complaints about Defendant Lees, the alleged retaliatory acts all appear to have been committed by employees of the Cheboygan Schools rather than NEMSCA, i.e., being called a perpetrator, being left out of the events which other children attended, and not being allowed to touch other students. (Dkt. 42 ¶¶ 26-27, 46.) To the extent that Plaintiff actually avers some retaliatory acts on the part of NEMSCA's employees, I suggest the claim fails under *Monell* for the reasons discussed below.

Plaintiff's "governmental liability" claim (Count III) is based on NEMSCA's hiring and retention of Defendant Lees and based on NEMSCA's failure to discipline Defendant Lees, which, Plaintiff contends, ratified or created a *de facto* custom, policy, or practice. (Dkt. 42 ¶ 51.) It appears that Plaintiff is attempting to aver both direct liability for NEMSCA's decision to hire or to retain Defendant Lees and also vicarious liability for its alleged *de facto* policy.

"Section 1983 liability must be based on more than *respondeat superior*, or the right to control employees. Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Shehee v. Luttrell*, 199 F.3d 295 (6th Cir. 1999) (quoting *Hays v. Jefferson County, Ky*, 668 F.2d 869, 874 (6th Cir. 1982)). *Cf. Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (finding *Monell* satisfied because liability arose on the basis of forms produced by defendant to manifest consent of parents to medical examinations that defendant contended included, though not expressly, genital

examinations and blood tests).[3]  In order to state a claim, Plaintiff must allege that Defendant made a deliberate choice among various alternatives and that the policy caused the injury.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1997); *Starcher v. Correctional Medical Services*, 7 Fed. Appx. 459, 465 (6th Cir. 2001).  Plaintiff must show "'an unconstitutional action that 'implements' or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers . . . .'"  *Scarbrough v. Morgan County Bd of Ed.*, 470 F.3d 250, 261 (6th Cir. 2006) (quoting *Shamaeizadeh v. Cunningham*, 338 F.3d 535, 556 (6th Cir. 2003)).

Here, Plaintiff has not alleged that NEMSCA made a policy choice to direct its employees to either retaliate in violation of the First Amendment or to hire and retain known pedophiles.  Nor has Plaintiff alleged that NEMSCA "'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.'"  *Petty v. County of Franklin, Ohio*, 478 F.3d 341, 349 (6th Cir. 2007) (quoting *Taylor v. Michigan Dep't of Corrs.*, 69 F.3d 76, 81 (6th Cir. 1995)).  Plaintiff's conclusory allegation of a *de facto* policy based on one incident is insufficient to survive summary judgment.  *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008) ("conclusory statements are not sufficient to survive any motion for summary judgment"); *Mitchell v. Toledo Hospital*, 964 F.2d 577, 584 (6th Cir. 1992) (conclusory statements are insufficient in summary judgment proceedings).  Therefore, I suggest that Plaintiff cannot survive summary judgment against NEMSCA (Count II or III) under any vicarious liability theory.

Alternatively, I suggest that Plaintiff's retaliation claim cannot stand by reason of Plaintiff's failure to allege sufficient adverse action taken against him that would deter a person of ordinary fitness from engaging in protected speech.  In *Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (6th Cir.

---

[3]Defendant did not challenge whether it was a state actor.

1999), the Sixth Circuit held that a First Amendment retaliation claim consists of three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Id*. Courts have held that being denied the opportunity to play high school football or basketball is sufficient adverse action. *See Seamons v. Snow*, 84 F.3d 1226, 1237-38 (10th Cir. 1996); *Henley v. Tullahoma City School System*, No. 02-5619, 2003 WL 22976590, at * 4 (6th Cir. Dec. 5, 2003) (basketball). Here, I suggest that being denied the opportunity to participate in a field trip, recess, play, or touching other students is a *de minimus* effect that does not rise to the level of adverse action. I thus suggest that summary judgment could be granted with respect to the retaliation claim on this ground as well.

**b.      Section 1983 Claims Against Defendants NEMSCA and Lees**

To state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege facts showing a deprivation of a constitutional right, privilege or immunity by a person acting under color of state law. *See Daniels v. Williams*, 474 U.S. 327, 330, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986). The parties do not dispute that, in this case, Defendant NEMSCA is a private non-profit corporation. To the extent that Plaintiff has alleged a direct liability claim under § 1983 against NEMSCA based on NEMSCA's decision to hire or retain Defendant Lees (Count III), I suggest that Plaintiff has failed to show that NEMSCA or Defendant Lees can properly be considered a state actor subject to liability under § 1983.

### i.    Test to determine whether a private party can be considered a state actor

"Section 1983 makes liable only those who, while acting under color of state law, deprive another of a right secured by the Constitution or federal law." *Romanski v. Detroit Entm't, L.L.C.*, 428 F.3d 629, 636 (6th Cir. 2005). "A private actor acts under color of state law when its conduct is 'fairly attributable to the state.'" *Id.*

The Sixth Circuit uses the public-function test, the state-compulsion test, and the nexus test to determine when a seemingly private party can be considered to have acted under color of state law. *S.H.A.R.K. v. Metro Parks Serving Summit County*, 499 F.3d 553, 564 (6th Cir. 2007). The "public function test" requires that "'the private entity exercise powers which are traditionally exclusively reserved to the state, such as holding elections or eminent domain.'" *Id.* (citing *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000)). "'The state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state.'" *Id.* at 565. "'Under the nexus test, "the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself."'" *Id.* (citations omitted). In applying a form of the nexus test, the Supreme Court noted that "a challenged activity may be state action . . . when it is 'entwined with governmental policies' or when government is 'entwined in [its] management or control.'" *Brentwood Academy v. Tennessee Secondary Schools Athletic Ass'n*, 531 U.S. 288, 296, 121 S. Ct. 924, 148 L. Ed. 2d 807 (2001) (finding TSSAA was state actor where public schools comprised 84% of membership of TSSAA, ministerial employees of TSSAA were treated like state employees regarding eligibility for state retirement system, and primary revenue was gate receipts from tournaments between TSSAA member schools).

## ii.    Application to Defendant NEMSCA

At oral argument, both parties cited *Dowe v. Total Action Against Poverty,* 145 F.3d 653, 658-59 (4th Cir. 1998), and *Nail v. Community Action Agency of Calhoun County*, 805 F.2d 1500, 1501-02 (11th Cir. 1986).  In both of these cases, the defendants were private entities who administered Head Start programs and the courts held that they were not state actors.

In *Nail*, the court held that although the state and federal governments provided significant funding to the defendant to run programs such as the Head Start program,

> none of the specific personnel decisions are controlled by state or federal regulations.  The state and federal officials in this case did not even have the approval power cited as insufficient to constitute state action in *Rendell-Baker*. Federal regulations governing the Headstart program do require that the contracting agencies establish personnel policies, and that such policies deal with the questions of staff qualifications, benefits and grievance procedures.  However, they need only be approved by the Headstart Policy Council, which is a body made up of people within the contracting agency itself, as well as parents and other interested parties whom the contracting agency has appointed to serve on the Headstart Policy Council.  Nor does [plaintiff] present any evidence that the state of Alabama regulated the agency's personnel decisions in any manner.

*Nail*, 805 F.2d at 1501-02.

In *Dowe,* the court noted that "the central inquiry in determining whether a private party's conduct will be regarded as action of the government is whether the party can be described 'in all fairness' as a state actor." *Dowe*, 145 F.3d at 659.  The court in *Dowe* cited the *Nail* case and also quoted *Rendell-Baker v. Kohn*, 457 U.S. 830, 102 S. Ct. 2764, 73 L. Ed. 2d 418 (1982), which held that "receipt of public funds does not make [an agency's] discharge decisions acts of the state." *Id*. at 840.  The court in *Dowe* held that, "[l]ike the adverse employment action in *Blum, Rendell-Baker,* and *Nail*, the personnel decision here was not controlled by the Commonwealth of Virginia." *Dowe*, 145 F.3d at 659.  The court continued that, "[t]ypically, a state 'can be held responsible for a private decision only when it has exercised coercive power or has provided such

significant encouragement, either covert or overt, that the choice must in law be deemed to be that of the State.'" *Id.* at 659-60 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S. Ct. 2777, 73 L. Ed. 2d 534 (1982)). Finding no evidence that the Commonwealth was involved in the decision to terminate Plaintiff's employment, the *Dowe* court granted summary judgment in favor of the defendant. The court in *Dowe* also noted that funding by the federal government may have been relevant to a *Bivens* action, but was not probative of liability under § 1983. *Id.* at 658.

During oral argument, Plaintiff's counsel distinguished *Dowe* and *Nail* on the basis that the decisions pertained to employment matters and that the complained-of actions in the instant case are abuse of a client of the program. That argument may apply to Defendant Lees; however, NEMSCA is being sued because Plaintiff has alleged that NEMSCA hired or retained Defendant Lees when it should have known he posed a danger to the students. (Dkt. 42 ¶ 51.) Therefore, I suggest that *Dowe, Nail,* and *Rendell-Baker* are not as quickly distinguished as Plaintiff would propose. Moreover, I cannot find in this case any allegation that the State of Michigan was at all involved in NEMSCA's decision to hire or retain Defendant Lees as a teacher in the Head Start program. As a result, I suggest that since Plaintiff has failed to come forward with any evidence of state action, I recommend that Defendant NEMSCA's motion for summary judgment be granted on this ground.

I further suggest that the same conclusion could be reached by utilizing the Sixth Circuit tests. Preschool is not a function "traditionally exclusively reserved to the state," such as holding elections, eminent domain, or even primary or secondary education. *See S.H.A.R.K., supra.* Nor has there been any allegation that the state exercises any coercive power over NEMSCA nor that there is a close nexus between the state and NEMSCA's actions. *Id.*

Finally, I note that the facts of a recent decision of the Sixth Circuit in a case previously before this Court stand in considerable contrast to the instant scenario. In *Hughes v. Region VII Area Agency on Aging*, ___ F.3d ___, Nos. 07-1570/1647 (6th Cir. Sept. 8, 2008),[4] the Sixth Circuit held that the defendant could be considered a state actor for purposes of § 1983. The court described how the Older Michiganians Act, MICH. COMP. LAWS § 400.584(1)(i) ("OMA"), established a commission whose purpose was to designate planning and service areas, i.e., areas of aging ("AAAs"), which were "under the supervision or direction of the state agency." *Id.* The OMA also created an office of services to the aging ("OSA") which was under the department of management and budget and whose director was to be appointed by the governor and whose director was "to receive compensation as provided by the legislature." MICH. COMP. LAWS § 400.585. In addition, the OSA must "supervise, monitor, assess, evaluate, and provide technical assistance to the area agencies on aging," such as Region VII. MICH. COMP. LAWS § 400.586(k). The OSA and the Commission promulgated rules to implement the OSA. MICH. COMP. LAWS § 400.591. The rules required, among other things, any area agency on aging to gain approval by the commission before using funds made available through the office until an area plan has been approved by the commission. MICH. ADMIN. CODE § 400.20105(1)-(2). In addition, the court in *Hughes* noted that the Michigan Court of Appeals held that the areas on aging, i.e., AAAs, are "subordinate to, and subject to the supervision of, the commission" on aging. *Detroit Area Agency on Aging v. Office of Services to the Aging*, 534 N.W.2d 229, 237 (Mich. Ct. App. 1995).

---

[4]Both counsel also discussed this case as it was litigated in the Michigan courts; *see Hughes v. Region VII Area Agency on Aging*, 277 Mich. App. 268 (2007), wherein the Michigan Court of Appeals held that Region VII was not an entity under the direct and exclusive control of Bay County and thus, that MICH. COMP. LAWS § 46.30a, requiring that the appointment or employment of a member of a county board of commissioners be from or by an officer or entity of that county, did not apply. The case did not consider whether a private, non-profit corporation was a state actor for § 1983 purposes. Thus, I suggest that this state appellate case is inapposite to the questions presented herein.

In the instant case, there is no evidence of any such comprehensive statutory scheme, the creation of a supervisory state agency or an on-going supervisory relationship between the State of Michigan and NEMSCA. In other words, there is no alleged entwinement approaching that described in *Hughes*. Therefore, I suggest *Hughes* provides little assistance. Instead, I suggest that NEMSCA falls into the category of private entities whose mere receipt of state funds does not transform its nature into that of a state agency.

### iii.    Application to Defendant Lees

As noted earlier, "[t]ypically, a state 'can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either covert or overt, that the choice must in law be deemed to be that of the State.'" *Dowe*, 145 F.3d at 659-60 (quoting *Blum*, 457 U.S. at 1004). In the instant case, I suggest that it cannot be seriously contended that the State of Michigan encouraged any of the alleged abuses committed by Defendant Lees. I therefore suggest that summary judgment is appropriately granted against Defendant Lees for any § 1983 claim, i,e, substantive due process (Count II).

### 5.    State Law Claims

I also suggest that, pursuant to *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966), 28 U.S.C. § 1367(c)(3),[5] and principles of comity, this Court should decline to exercise its discretion to entertain Plaintiff's remaining pendent state law claims of assault and battery and intentional infliction of emotional distress. *Id*. at 726 (noting that generally "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.")

---

[5]Although § 1367 technically superseded *Gibbs*, courts agree that "the exercise of discretion . . . is still informed by whether remanding the pendent state claims comports with the underlying objective of 'most sensibly accommodating' the value of 'economy, convenience, fairness and comity.'" *Executive Software N. Am., Inc. v. U.S. Dist. Court,* 24 F.3d 1545, 1557 (9th Cir. 1994).

*See also Hankins v. The Gap, Inc*., 84 F.3d 797, 802-03 (6th Cir. 1996) (when all federal claims have been dismissed at a pretrial stage and the parties are non-diverse, the district court should decline to exercise supplemental jurisdiction over the surviving state law claims); *Wolotsky v. Huhn*, 960 F.2d 1331, 1378 (6th Cir. 1992) ("Where a district court exercises jurisdiction over state law claims solely by virtue of pendent jurisdiction and the federal claims are dismissed prior to trial, the state law claims should ordinarily be dismissed without reaching their merits.").[6]

### D.     Plaintiff's Motion to Amend

Plaintiff's motion to amend the complaint for a second time seeks to add a *Bivens* claim against Defendants NEMSCA and Lees.  Defendant NEMSCA did not respond to the motion. Defendant Lees' response to the motion simply states that "the Constitution and Federal laws do not afford protection against activities of private citizens not acting under color of law."  (Dkt. 67 at 6 (citing *Grubbs v. Slater,* 144 F. Supp. 554 (D.C Ky. 1955).)

### 1.     Standard of Review

When a party wishes to amend a pleading after the opposing party's responsive pleading has been served, it may only do so by leave of court or by written consent of the adverse party. FED. R. CIV. P. 15(a).  When a motion for leave to amend is before the court, Rule 15(a) provides that "leave shall be freely given when justice so requires." *Id.*  "Although Rule 15(a) indicates that leave to amend shall be freely granted, a party must act with due diligence if it intends to take advantage of the Rule's liberality," *United States v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995), because, despite the Rule's liberality, leave to amend "is by no means

---

[6]I note that "[t]he period of limitation for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of a claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."  28 U.S.C. § 1367(d).

automatic." *Little v. Liquid Air Corp.*, 952 F.2d 841, 845-46 (5th Cir. 1992). The decision to grant or deny a motion to amend a pleading is left to the sound discretion of the district court. *Robinson v. Michigan Consol. Gas Co., Inc.*, 918 F.2d 579, 591 (6th Cir. 1990).

> When determining whether to grant leave to amend, the court is to consider several factors:
>
> Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision. Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

*Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989) (quoting *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973)). "When amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2001). In addition to these factors, courts must also take into account whether the moving party is seeking to add claims or to add parties, because amendments seeking to add claims are generally granted more freely than amendments adding parties. *Union Pac. R.R. Co. v. Nevada Power Co.*, 950 F.2d 1429, 1432 (9th Cir. 1991).

## 2. Discussion

I note at the outset that (1) Plaintiff is seeking to add a claim rather than a party, (2) Plaintiff was permitted to amend the complaint once already after securing counsel (Dkt. 42), and (3) it is rather late in the case since discovery closed on February 29, 2008. Having in mind both the standards outlined above and the procedural stance of this case, I first suggest that any amendment with respect to Defendant NEMSCA would be futile as I have previously concluded that Plaintiff cannot survive summary judgment against NEMSCA (Counts II or III) under any vicarious liability theory. However, to the extent that Plaintiff has alleged a direct liability claim

against NEMSCA based on NEMSCA's decision to hire or retain Defendant Lees (Count III), I must consider whether NEMSCA can be considered a *federal* actor subject to liability under *Bivens* in order to determine whether that amendment would be futile.

"[P]rivate actors who cause constitutional injuries can be held liable for damages under *Bivens* if their conduct is so related to the federal government that they can be regarded as federal agents or actors, that is, the private corporation acted under color of federal law." *Yeager v. General Motors Corp.*, 265 F.3d 389, 398 (6th Cir. 2001). Thus, if either Defendant NEMSCA or Lees cannot be considered federal actors subject to liability under *Bivens*, then the motion to amend the complaint should be denied as futile. If, on the other hand, Defendant NEMSCA or Lees could be considered a federal actor, then the proposed Second Amended Complaint could cure the defect found in the Amended Complaint and the amendment would not be futile.

### a.    NEMSCA Is Not a Federal Actor for *Bivens* Purposes

In *Bivens*, the United States Supreme Court held that plaintiffs may sue federal agents in their individual capacities for money damages where plaintiffs allege that their Fourth Amendment rights were violated despite an absence of an express statutory cause of action analogous to 42 U.S.C. § 1983. *Bivens*, 403 U.S. at 397. Since *Bivens*, the Supreme Court has implied a cause of action for money damages directly under the Constitution in only two other instances.

In *Davis v. Passman*, 442 U.S. 228, 99 S. Ct. 2264, 60 L. Ed. 2d 846 (1979), the Court held that the plaintiff had stated a cause of action against her former employer, a United States Congressman, for violations of the Due Process Clause, stating that "there are available no other alternative forms of judicial relief." *Id.* at 245.

In *Carlson v. Green*, 446 U.S. 14, 100 S. Ct. 1468, 64 L. Ed. 2d 15 (1980), the Supreme Court held that the plaintiff could sue federal prison officials for violations of the Cruel and

Unusual Punishment Clause of the Eighth Amendment, notwithstanding the fact that, unlike the plaintiffs in *Bivens* and *Davis*, plaintiff had another remedy.  The Court explained that although the plaintiff in *Carlson* could have brought suit under the Federal Tort Claims Act ("FTCA"), there were no factors counseling toward hesitation to imply a cause of action and that Congress views the FTCA as a parallel and complementary cause of action to *Bivens*.  *Id.* at 19-20.  In addition, the Court identified four factors that weighed in favor of finding that the FTCA does not preclude a *Bivens* action:  (1) only the United States, rather than individual officials, can be sued under the FTCA; (2) punitive damages are not available under the FTCA as they are in a *Bivens* claim; (3) only bench trials are available under the FTCA while jury trials are available in a *Bivens* claim; and (4) FTCA claims turn on the law of the state in which the action occurred but the liability of federal officials alleged to have violated federal constitutional rights should be governed by uniform federal rules.  *Id.* at 21-23.

Since *Carlson*, the Supreme Court has not recognized any further causes of action for money damages directly from the Constitution in any other case.  *See, e.g., Wilkie v. Robbins*, ___ U.S. ___, 127 S. Ct. 2588, 168 L. Ed. 2d 389 (2007) (declining to imply *Bivens* action where landowner alleged retaliation for exercising his property right to exclude or under general theory of unjustifiably burdening his property rights against employees of the Bureau of Land Development); *FDIC v. Meyer*, 510 U.S. 471, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994) (refusing to imply a *Bivens* action against a federal agency, as opposed to federal agents in their individual capacities); *Schweiker v. Chilicky*, 487 U.S. 412, 108 S. Ct. 2460, 101 L. Ed. 2d 370 (1988) (declining to imply a *Bivens* action where disabled social security beneficiaries sought damages for emotional distress and other hardships suffered because of delays in their receipt of benefits where such damages were otherwise unavailable); *Chappell v. Wallace*, 462 U.S. 296, 103 S. Ct.

2362, 76 L. Ed. 2d 586 (1983) (declining to imply a *Bivens* action for enlisted military personnel who claimed injury by unconstitutional conduct of their superior officers); *Bush v. Lucas*, 462 U.S. 367, 103 S. Ct. 2404, 76 L. Ed. 2d 648 (1983) (refusing to imply a *Bivens* action for First Amendment violations arising out of governmental employment relationship where procedural and substantive remedies available against the United States even though those remedies would not provide complete relief for the plaintiff).

In 2001, the Supreme Court decided the case of *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001), which is instructive here. In *Malesko*, the Court declined to imply a *Bivens* action where an inmate alleged that Correctional Services Corporation ("CSC"), a private corporation under contract with the Bureau of Prisons, violated his Eighth Amendment rights by requiring him to climb five flights of stairs despite CSC's knowledge of the plaintiff's heart condition that entitled him to use the elevator. The Court focused on the fact that the "core premise" of *Bivens* is concerned "solely with deterring the unconstitutional acts of individual officers" and that the *Davis* and *Carlson* opinions implied a *Bivens* action only "to provide an otherwise nonexistent cause of action against *individual officers* alleged to have acted unconstitutionally [*Carlson*] [since the FTCA allows suit against the Untied States only], or to provide a cause of action for a plaintiff who lacked *any alternative remedy* [*Davis*]." *Id.* at 70 (emphasis in original). As discussed earlier, the Court emphasized that, "[w]here such circumstances are not present, we have consistently rejected invitations to extend *Bivens* . . . ." *Id.*

In the instant case, Plaintiff has sued the individual alleged to have violated his Fifth Amendment substantive due process rights (Lees) and has also filed state law claims of assault and battery and intentional infliction of emotional distress. In addition, Plaintiff could have sued the individuals responsible for the alleged retaliatory conduct., i.e., specific employees of NEMSCA

or the Cheboygan Schools, but has elected not to, at least in this forum. Plaintiff is therefore not

without any remedy, nor does he lack a remedy against individual actors. Therefore, I suggest that

in keeping with the Supreme Court's reluctance to extend *Bivens*,[7] a cause of action against the

instant Defendant private corporation, NEMSCA, should not be implied. *See also Menteer v.

Applebee*, 196 Fed. App'x 624 (10th Cir. 2006) (dismissing Corrections Corporation of America

because the "Supreme Court declined to infer a constitutional tort remedy against a private

corporation"); *Peoples v. CCA Detention Centers*, 422 F.3d 1090, 1099 (11th Cir. 2005) (declining

to imply a *Bivens* action against the defendant private corporation operating a pretrial detention

center where state law provided a remedy, although it capped the amount of punitive damages

available for plaintiff's cause of action alleging Eight Amendment violations); *Brewster v. Cooper

Industries, Inc.*, No. 05-CV-482KKC, 2005 WL 2403734 (E.D. Ky. Sept. 28, 2005) ("There is no

implied private right of action, pursuant to *Bivens,* for damages against private entities that engage

in alleged constitutional deprivations while acting under color of federal law.").

Since I suggest that a *Bivens* action cannot proceed against Defendant NEMSCA, I further

suggest that any amendment to add a *Bivens* claim would be futile; thus, I recommend that the

motion to amend be denied.

**b.      Lees Is Not a Federal Actor for *Bivens* Purposes**

*Malesko* left the question of whether individuals employed by private entities may be

considered federal actors under *Bivens* unanswered. However, the same considerations which

caution against creating a *Bivens* action where other remedies exist applies, I suggest, equally to

---

[7]Two months before the *Malesko* decision, the Sixth Circuit held that the defendant's voluntary compliance with governmental regulations as part of its contractual relationship with the federal government did not support a *Bivens* action. I note that the recommended result would have been the same under Sixth Circuit law even before *Malesko* was decided.

individuals who work for private entities as it does to the entities themselves. At least one circuit has declined to extend *Bivens* to employees of private entities where state law provides an effective remedy, as it does in the instant case via the state torts averred in the complaint. *See Holly v. Scott*, 434 F.3d 287, 296-97 (4th Cir. 2006) ("an inmate in a privately run federal correctional facility does not require a *Bivens* cause of action where state law provides him with an effective remedy" against the individuals alleged to have violated his constitutional rights). In addition, at least one circuit has refused to extend *Bivens* into a "new context," substantive due process, which also "intrude[d] deeply into the national security policies." *Arar v. Ashcroft*, 532 F.3d 157, 177 (2d Cir. 2008) (declining to imply a *Bivens* action where complaint failed to state a claim under the Torture Victim Prevention Act and where plaintiffs also alleged that detention and mistreatment by officials violated the Fifth Amendment's substantive due process component).[8]

I further note that individuals who perform work more directly for the federal government have escaped liability under *Bivens*. For instance, federal public defenders and court-appointed counsel are not federal agents acting under color of federal law for purposes of a *Bivens* action. *See Polk County v. Dodson*, 454 U.S. 312, 320-21, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981); *Burrell v. Arnold*, Nos. 97-3967, 97-4087, 1998 WL 53731 (6th Cir. Aug. 10, 1998); *Kefalos v. Axelrod*, No. C2-03-180, 2005 WL 2493375 (S.D. Ohio Oct. 7, 2005). *But see Vector Research, Inc. v. Howard & Howard Attorneys, P.C.*, 76 F.3d 692, 698 (6th Cir. 1996) (finding that private attorneys who helped federal marshals execute an *ex parte* order were authorized to perform and did perform a governmental task and therefore could be sued under *Bivens*).

---

[8]I also note that Plaintiff's claim against Defendant Lees is a substantive due process claim, which the *Arar* court described as a "new context." However, because *Arar* also involved national security policies, I do not rely on it as precedent here.

I thus suggest that it would be an inappropriate stretch to create a *Bivens* action against an individual employee of a private corporation that manages a Head Start program, especially where, as here, Plaintiff has other remedies available.

## E.    Conclusion

For all the reasons stated above, I suggest that Plaintiff's motion to amend be denied and that Defendants NEMSCA's and Lees' motion for summary judgment be granted. I further suggest that this Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims. Accordingly, I suggest that the case be dismissed in its entirety.

## III.    <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

s/ *Charles E Binder*
CHARLES E. BINDER
United States Magistrate Judge

Dated: September 15, 2008

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Cynthia Heenan, Hugh M. Davis, Jr., James L. Mazrum, Mark J. Brissette, Joseph P. Kwaitkowski, and served on District Judge Ludington in the traditional manner.


Date:  September 15, 2008             By____s/Patricia T. Morris_____
                                      Law Clerk to Magistrate Judge Binder